IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:13-CV-265-FL

| | |
|---|---|
| EVETTE M. DROTAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Evette Drotar ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-16] be granted, Defendant's Motion for Judgment on the Pleadings [DE-18] be denied, and the matter be remanded to the Commissioner for further consideration.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability, DIB, and SSI on January 14, 2010, alleging disability beginning November 14, 2008. (Tr. 78-81, 155, 163.) The application was denied initially and upon reconsideration, and a request for hearing was filed.

(Tr. 78-81, 116-17.) On April 5, 2012, a hearing was held before Administrative Law Judge Christopher Willis ("ALJ"), who issued an unfavorable ruling on June 21, 2012. (Tr. 10, 25.) On October 10, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 2-4.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of her past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id*. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id*. §§ 404.1520a(e)(3), 416.920a(e)(3).

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not

engaged in substantial gainful employment since November 14, 2008. (Tr. 12.) Next, the ALJ determined Plaintiff had the following severe impairments: history of polytrauma secondary to motor vehicle accident with residuals; degenerative disc disease of the lumbar spine with radiculopathy status-post fractures related to her motor vehicle accident; post-traumatic stress disorder; personality disorder; somatization disorder (chronic pain type); restless leg syndrome; major depressive disorder; and history of osteomyelitis of the pelvis and left femur with removal of leg hardware; and obesity. (Tr. 12-13.) However, at step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and found that Plaintiff had the ability to perform sedentary work with the following restrictions:

> [N]o more than occasional climbing of ramps and stairs, but no climbing of ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching, and/or crawling; with respect to her lower extremities, she is restricted to no more than occasional pushing, pulling, and/or operating foot controls; avoid exposure to workplace hazards, such as unprotected heights and dangerous moving machinery; she is capable of performing simple, routine, repetitive tasks and maintaining attention and concentration, persistence, and pace to stay on task for increments of 2 hours at a time during an 8-hour workday, as needed to perform simple, routine, repetitive tasks; she requires a low stress setting, further defined as involving no more than occasional decision-making or changes in the work setting, in a job primarily dealing with things as opposed to people, and not involving production pace work, rather goal oriented job; and she requires a sit/stand option, but would not have to change position as often as every 15 minutes.

(Tr. 14.) In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms not fully credible. (Tr. 15.) At step four, the ALJ concluded Plaintiff was not capable of performing the requirements of her past relevant work. (Tr. 23-24.) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that

4

Plaintiff was capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national and state economies. (Tr. 24-25.)

## IV. Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision denying benefits on two grounds. Plaintiff first contends that the ALJ erred by failing to consider whether her impairments meet or medically equal Listing 1.04(A) for spinal stenosis. Second, Plaintiff asserts that the ALJ's residual functional capacity ("RFC") finding lacks the required specificity under Social Security Ruling 96-9p.

### A. Medical Listing 1.04A

Plaintiff contends that the ALJ erred by not considering Listing 1.04A for Plaintiff's spinal stenosis. The ALJ addressed listings for Plaintiff's mental impairments, providing no analysis pertaining to whether Plaintiff's physical impairments met or medically equaled a listing.

The burden of proof at step three is on the claimant to show that she meets or equals all the criteria of a listing. *Hunter v. Sullivan*, 993 F.2d 31 (4th Cir. 1992). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If an impairment does not meet the criteria of a listing, it may nevertheless medically equal the criteria. 20 C.F.R. § 404.1525(e)(5). To establish medical equivalence, a claimant must "present medical findings equal in severity to all the criteria" for that listing. *Zebley*, 493 U.S. at 531. "The [ALJ] . . . is responsible for deciding . . . whether a listing is met or equaled." SSR 96-6p, 1996 WL 374180, at *3 (Jul. 2, 1996). In determining whether a listing is met or equaled, the ALJ must "consider all evidence in

[claimant's] case record about [the] impairment(s) and its effects on [claimant] that is relevant to this finding. 20 C.F.R. §§ 404.1526(c), 416.926(c).

Where a claimant has a severe impairment and the record contains ample evidence that symptoms related to the impairment "correspond to some or all of the requirements of a listing," it is incumbent upon the ALJ to identify the listing and to compare the claimant's symptoms to each of the listing's requirements. *See Cook v. Heckler,* 783 F.2d 1168, 1173 (4th Cir.1986). While it may not always be necessary for the ALJ to perform a "step-by-step" analysis of the listing's criteria, the ALJ must evaluate the claimant's symptoms in light of the specified medical criteria and explain his rationale. *Williams v. Astrue,* No. 5:11–CV–409–D, 2012 WL 4321390 (E.D.N.C. Sept. 20, 2012). Where the ALJ fails to make the necessary comparison or fails to explain the basis for his decision other than in a summary or conclusory fashion, the court is unable to determine whether the ALJ's decision is supported by substantial evidence. *Cook,* 783F.2d at 1173; *see also Smith v. Colvin*, No. 7:13-CV-69-FL, 2014 WL 1814302, at *5-6 (E.D.N.C. May 7, 2014) (remanding where the listing analysis was not supported by the medical evidence of record); *cf. Johnson v. Astrue,* 5:08–CV–515–FL, 2009 WL 3648551, at *2 (E.D.N.C. Nov. 3, 2009) ("Meaningful review may be possible even absent the explicit step-by-step analysis set out in *Cook* where the ALJ discusses in detail the evidence presented and adequately explains his consideration thereof.").

Listing 1.04 refers to disorders of the spine, such as spinal stenosis and degenerative disc disease, resulting in the compromise of a nerve root or the spinal cord. 20 C.F.R. § 404, Subpt. P, App. 1, 1.04. Specifically under Listing 1.04A, a claimant must produce "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by

sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. 20 C.F.R. § 404, Subpt. P, App. 1, 1.04A.

Plaintiff's symptoms in this case appear to correspond to some or all of the requirements on Listing 1.04A. The medical evidence of record establishes a history of severe spinal stenosis, along with severe degenerative changes and "aggressive degenerative disc disease." (Tr. 492, 540, 646, 648.) There are references throughout the record indicating chronic leg pain. (Tr. 531, 550-51, 646, 690.) Plaintiff has demonstrated a limited range of motion in her spine and instances of motor and sensory loss. (Tr. 354, 361, 628, 690, 412, 630.) Plaintiff additionally had a straight leg raise that was "mildly positive." (Tr. 630.) The medical record also indicates that Plaintiff suffers from "nerve root impingement." (Tr. 524.)

Although the ALJ discussed much of the above medical evidence in his decision, he failed to address any listing pertaining to Plaintiff's physical impairments, which the ALJ concluded were severe enough to limit Plaintiff to sedentary work. From the ALJ's lack of analysis for Plaintiff's physical impairments at step-three, the court is left to speculate whether the ALJ found Plaintiff's impairment was not characterized by (1) spinal stenosis or degenerative disc disease; (2) nerve root compression; (3) neuro-anatomic distribution of pain; (4) limitation of motion of her spine; (5) motor loss accompanied by sensory or reflex loss; or (5) a positive straight-leg raise. The lack of analysis regarding a listing related to a physical impairment suggests the absence of all factors under any listing, but such a finding is not supported by the medical evidence of record or the ALJ's other findings in this case. Because the ALJ failed to discuss any listing pertaining to Plaintiff's severe impairments though strongly indicated by the medical evidence, "it is simply impossible to tell whether there was substantial evidence to support the [ALJ's] determination." *Cook*, 783 F.2d at 1173.

7

### B. Residual Functional Capacity

Plaintiff next argues that the ALJ's RFC finding lacks the specificity required by Social Security Ruling 96-9p. Social Security Ruling 96-9p addresses when an ALJ makes a disability determination for a claimant who has the RFC for less than a full range of sedentary work and who requires a sit/stand option:

> **Alternate sitting and standing:** An individual may need to alternate the required sitting of sedentary work by standing (and possibly walking) periodically. Where the need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. *The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.*

SSR 96-9p, 1996 WL 374185, *7 (Jul. 2, 1996) (emphasis added).

At the hearing, the ALJ presented the following hypothetical to the VE:

> I want you to first assume an individual of the claimant's age, education, and work experience. For this first hypothetical, the individual is limited to performing work at the sedentary level of exertion, as that term is defined in the regulations, which generally includes lifting, carrying, pushing and/or pulling up to 10 pounds occasionally and 5 pounds frequently; sitting for up to six hours in an eight-hour work day with normal breaks; standing and/or walk for periods of up to two normal breaks.
>
> From a postural standpoint, the individual is limited to no more than occasional climbing ramps or stairs; no climbing ladders, ropes, scaffolds; occasional balancing, stooping, kneeling, crouching, crawling.
>
> With respect to both lower extremities, no more than occasional pushing/pulling, operating foot controls. The hypothetical individual will need to avoid concentrated exposure to work place hazards of unprotected heights, dangerous moving machinery, as examples –
>
> Bear with me for a second –
>
> The individual is capable of performing simple, routine, repetitive tasks and maintaining attention, concentration, persistence, and pace to stay on task for increments of two hours at a time throughout an eight-hour work day, as needed to perform simple, routine, repetitive tasks.

> We need a low-stress, which I'll further define as involving no more than occasional decision making or changes in work setting. We need a job primarily dealing with things as opposed to people. No production pace work, rather needs a job that's goal oriented.

(Tr. 67-69.) The VE testified that such an individual would be able to perform the jobs of order clerk in the food and beverage industry, assembler in the optical industries, and bench hand. (Tr. 69.) The ALJ subsequently questioned the VE concerning what jobs would be available to such an individual if a sit/stand option was included within the limitations. (Tr. 70.) The VE indicated that the assembler and bench hand positions could still be performed by such an individual. (*Id.*) The VE further clarified that the sit/stand option would be "at will" at those positions, but if a claimant had to change position as much as every fifteen minutes, such a restriction would preclude gainful employment. (Tr. 71.)

As a result the ALJ found that Plaintiff retained the RFC to perform sedentary work. However, he determined that Plaintiff required "a sit/stand option, but would not have to change position as often as every 15 minutes." (Tr. 14.) A description of a sit/stand option as "at will" is sufficient to describe frequency. *See Thompson v. Astrue*, 2011 WL 3489671, at *2. 442 Fed. App'x 804, 807 (4th Cir. Aug. 10, 2011); *see also Hedspeth v. Astrue*, No. 2:11-CV-38-FL, 2012 WL 4017953, at *5 (E.D.N.C. Sept. 12, 2012) (finding that "the ALJ did not err in posing a hypothetical to the VE which included only a 'sit/stand option' before ultimately finding that plaintiff required a 'sit/stand option at will'"); *Pierpalio v. Astrue*, No. 4:10-2401-CMC-TER, 2011 WL 7112913, at *9 (D.S.C. Dec. 15, 2011) (finding that the "at will" indication was sufficient to satisfy requirement of frequency). Here, the VE indicated that both the assembler and bench hand positions allowed for an "at will" sit/stand option. The ALJ further described the sit/stand option in the RFC by explaining that Plaintiff would not have to change position more

9

than every fifteen minutes, indicating the ability to perform gainful employment. Thus, the ALJ adequately described a frequency at which Plaintiff could change position

## **CONCLUSION**

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-16] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-18] be DENIED, and the case be REMANDED to the Commissioner for further consideration.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 6th day of November 2014.

							_____
							KIMBERLY A. SWANK
							United States Magistrate Judge